Motion Exhibit 1
Redacted
Memorandum

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Application for Order        ) | |
| Transferring Dispute, Staying      )  | No. 1:06-mc-00034-RJL |
| Discovery, or Quashing Subpoena of )  | |
| Sheela Stuart                      )  | |

**MEMORANDUM OF LAW OF PEOPLE FIRST
OF TENNESSEE, *et al.*, IN OPPOSITION TO UNITED STATES'
APPLICATION TO TRANSFER DISPUTE
TO MIDDLE DISTRICT OF TENNESSEE, OR, IN THE
ALTERNATIVE, QUASH SUBPOENA OF SHEELA STUART,
AND IN SUPPORT OF MOTION OF PEOPLE FIRST
OF TENNESSEE, *et al.*, TO COMPEL COMPLIANCE WITH SUBPOENA**

### Introduction

People First of Tennessee, *et al.*, has moved the Court for an order compelling compliance with a subpoena duces tecum to Sheela Stuart, whose place of business is in this judicial district, in connection with a forthcoming hearing in *People First of Tennessee, et al., v. Clover Bottom Developmental Center, et al.*, No. 95-1227 (M.D. Tenn.), a class action suit filed by residents of three state institutions for persons with developmental disabilities. Dr. Stuart was retained by the United States of America in connection with a Motion for Partial Termination of Settlement Agreement filed by officials of the State of Tennessee, who as defendants moved to end court oversight of Greene Valley Developmental Center, one of the state institutions in which members of the plaintiff class reside. To prevail in this motion, the State of Tennessee defendants must demonstrate that conditions and services at Greene Valley are in substantial requirements with the provisions of the consent decree entered by the district court in that case.

Dr. Stuart made several visits to Greene Valley Developmental Center, reviewed

residents' records, observed institutional conditions reported her findings to all parties in the case. Her last two visits occurred in March and April, 2005. A copy of the subpoena and notice of deposition for Dr. Stuart are attached to the United States' Application to Transfer Dispute as Exhibit 6.

In every visit in which Dr. Stuart wrote a report that was shared with the parties ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, she reported that Greene Valley was not in compliance with the provisions of the consent decree requiring the delivery of communication services to institutional residents. After her last visit, the United States represented to the parties and the Court that its experts, including Dr. Stuart, had found the institution in substantial compliance.[1] However, the United States submitted no report by Dr. Stuart, refused to disclose her findings or make her available for deposition. Thus, the United States has made representations that favor the State of Tennessee defendants, while refusing to allow the plaintiffs, People First of Tennessee, to determine whether those representations have any foundation in Dr. Stuart's actual observations, data analysis, findings and conclusions. People First seek to take Dr. Stuart's deposition to learn whether in fact she found the institution in substantial compliance with the requirements of the consent decree.

On January 20, 2006, People First of Tennessee noticed Dr. Stuart's deposition. They subsequently served her with a subpoena issuing from this Court. Dr. Stuart's deposition was

---

[1] The expert in communication services retained by People First of Tennessee, *et al.,* who visited Greene Valley at the same time as Dr. Stuart, found that Greene Valley was still out of compliance with the active treatment requirements of the consent decree. The Quality Review Panel, the team of experts who are responsible to monitor compliance with the agreement, visited Greene Valley after Dr. Stuart's visit and found that compliance in communication services was "pending" but not yet achieved.

noticed for January 31, 2006; counsel for the State of Tennessee defendants have expressed their willingness to extend the period for discovery to enable the plaintiffs to take his deposition. However, the United States filed a motion asking this Court to transfer any proceedings concerning the subpoena to the Middle District of Tennessee, or in the alternative to stay discovery or quash the subpoena. The United States asserts that Dr. Stuart is immune from discovery as a non-testifying expert protected by Rule 26(b)(4)(B), Fed. R. Civ. P. People First asserts that the United States has waived any protection of that Rule by its representations that Dr. Stuart has found Greene Valley in substantial compliance, and that fundamental fairness requires that People First have the opportunity to challenge those representations by deposing Dr. Stuart.

### Factual and Procedural Background

*People First of Tennessee v. Clover Bottom Developmental Center* was filed on December 22, 1995, by People First of Tennessee, an advocacy organization of and for persons with disabilities, against officials responsible for operating Tennessee's service systems for persons with developmental disabilities. After lengthy settlement negotiations in which the United States and the Parent-Guardian Associations of the institutions participated although they were not yet parties, a consent decree, the Settlement Agreement, was approved by the district court in July, 1997. At the time the consent decree was presented to the court for approval, the United States filed its own action against the same state officials pursuant to the Civil Rights of Institutionalized Persons Act, and the court consolidated the two cases for further proceedings. The parties designated an expert panel, the Quality Review Panel, to monitor implementation.

The Motion for Partial Termination, seeking to release Greene Valley Developmental

Center from court supervision, was filed by the State of Tennessee on March 26, 2001. By the terms of the consent decree, the State of Tennessee must prove that Greene Valley Developmental Center has demonstrated "the achievement and maintenance of compliance" with all provisions of certain sections of the decree with respect to institutional conditions at Greene Valley Developmental Center: Section VI, Institutional Care and Services, and VII, Protection from Harm. Plaintiffs People First of Tennessee, *et al.*, opposed partial termination of the Agreement as to Greene Valley, after a tour by their expert revealed significant deficiencies in numbers of qualified staff, absence of direct physical, occupational and speech therapies, improper positioning of residents in wheelchairs, inadequate Individual Support Plans, failure to provide adequate communication services and failure to provide active treatment. No. 95-1227 (M.D. Tenn.), Dkt. #551 (August 9, 2001).

The United States also filed a response in opposition to the motion, asserting that their experts had found violations of the Settlement Agreement with respect to health care, active treatment, communication services and protection from harm. Dkt. # 595.

On July 7, 2004, the United States filed a Supplemental Response to the State's motion for partial termination, Dkt. #704. The United States reported that the institution had achieved compliance with some provisions of the decree but was still out of compliance with other requirements. In its reviews of Greene Valley in 2003 and 2004, the Quality Review Panel also found noncompliance with the requirements of the consent decree.

On November 5, 2004, following a status conference with the parties, the district court ordered that the parties conduct formal tours of Greene Valley in April, 2005, preceded by informal tours thirty to forty-five days before the formal tours. The parties and their experts

4

conducted their informal and formal tours during the weeks of March 14, 2005 and April 25, 2005.

On March 16, 2005, following her informal tour, Dr. Stuart participated in an exit conference with state officials and representatives of the other parties. A representative of People First of Tennessee attended the interview ███████████████████████████████████
███████████████████████████████

On March 25, 2005, the United States wrote to the State and the other parties, summarizing its conclusions from the on-site expert review of March 14-16, 2005. The letter is attached hereto as Exhibit A. Based on Dr. Stuart's review, the United States found "serious deficiencies" in communication services at the institution. Among other deficiencies in communication services, the United States reported the following:

- Residents do not receive adequate opportunities for participating in communication and accessing augmentative and alternative communication systems.

- Residents who were identified as needing communication systems in the United States' review in February, 2004 still had not received those systems or sufficient services to implement them.

- Descriptions of residents' individual functional communication systems do not provide sufficient guidance for staff to understand their communications.

- There is a lack of long-term planning to expand residents' communication systems.

Exh. 1 at 8-9.

The parties returned to Greene Valley during the week of April 25, 2005. Dr. Stuart's visit lasted approximately one and a half days, and she did not conduct an exit interview. On May 11, 2005, the United States sent a letter to the parties stating that based on its experts' onsite reviews, "we are pleased to inform you of our conclusion that GVDC is now in compliance with all provisions of Sections VI and VII of the Settlement Agreement that relate to institutional conditions." Shanetta Cutler, Letter of May 11, 2005 at 1 (attached as Exh. 2).

In June, 2005, the parties submitted a Joint Status Report to the district court stating the various parties' views on the status of implementation of the consent decree. Dkt. # 732 (filed June 10, 2005). In its section of the Joint Status Report, the United States stated that,

> [T]he United States no longer objects to the GVDC Motion, which pertains to the institutional portions of Sections VI and VII of the Settlement Agreement. ***The United States' determination was based upon the professional judgment of its consultants in reviews of conditions of care at GVDC in March and April 2005,*** as well as a review of documents provided to the United States by the State.

(Emphasis added).

Beginning in July, 2005, the parties conducted discovery on their respective findings concerning Greene Valley Developmental Center. The United States refused to answer the Interrogatories, Requests for Admission and Requests for Production of Documents propounded by People First of Tennessee and asserted the protection from discovery conferred by the work product doctrine and by Rule 26(b)(4)(B). The United States also refused to produce a privilege log. *See McNally Tunneling Corp. v. City of Evanston,* 2002 U.S. Dist. LEXIS 379 *14 (N.D. Ill. January 14, 2002) (an opposing party is entitled to a privilege log of the documents concerning a consulting expert's opinions). The United States' responses to the discovery requests of People First are attached to its Application for Transfer as Exhibit 3. However, the United States

responded to a Request for Admission propounded by the State of Tennessee, stating that it admitted that Greene Valley Developmental Center was in substantial compliance with the requirements of the Settlement Agreement. Application for Transfer, Exh. 4 at 6.

On December 22, 2005, the District Court issued a scheduling order setting the Motion for Partial Termination for hearing on March 28, 2006. Dkt. # 737. People First of Tennessee noticed Dr. Stuart's deposition on January 20, 2006 for a deposition on January 31, 2006. . Neither Dr. Stuart nor the United States has objected to the subpoena pursuant to Rule 45, Fed. R. Civ. P. However, after it filed the present motion, the United States informed the parties that it would not produce Dr. Stuart for deposition on January 31, 2006.

## Argument

**I.     THE UNITED STATES' MOTION TO TRANSFER MUST BE DENIED.**

The United States has filed a "motion to transfer dispute" from this Court to the Middle District of Tennessee, although no dispute was pending in this Court at the time it filed its motion, and, as noted above, neither Dr. Stuart nor the United States had submitted an objection to the subpoena. Since the United States has moved in the alternative for a motion to quash Dr. Stuart's subpoena, we will treat its motion as primarily a motion to quash and secondarily to transfer the proceedings on that motion so as to avoid any uncertainty about the court's jurisdiction.

The United States acknowledges that this Court has jurisdiction to hear any dispute about the subpoena to Dr. Stuart under Rule 45(c)(3)(A), which states that motions to quash a subpoena should be made to "the court by which a subpoena was issued"; and Rule 26(c), Fed. R. Civ. P., which states that in matters relating to a deposition, motions for protective order can be made to

7

"the court in the district where the deposition is to be taken." The United States asserts that the Middle District of Tennessee also has jurisdiction to decide a motion for protective order under Rule 26(c), as the "court in which the action is pending," and that it has already filed a Motion for Protective Order pursuant to Rule 26(c) in *People First of Tennessee v. Clover Bottom Developmental Center* in the Middle District of Tennessee concerning the same issue.

While People First does not disagree with the United States' recitation of the rules, the United States' statement that it has filed a motion for protective order in the Middle District of Tennessee is incorrect. No such motion has been filed in the Middle District of Tennessee. By previous order of the district court in *People First of Tennessee v. Clover Bottom Developmental Center,* the case is administratively closed, and the parties may not file motions in the case. Dkt. ## 630 (March 19, 2002), 650 (March 25, 2003). Instead, they must submit any motions they wish to file to the chambers of the district judge, the Honorable Robert Echols, and request that the motion be filed. Only if the court grants leave to file the motion will it be filed. Judge Echols has not granted the United States leave to file its motion for protective order. Thus, this Court may well be the only forum in which the United States' motion to quash, or the motion of People First to compel, may be heard. For this reason, unless the district court in which the underlying action is pending agrees to hear this motion, People First submits that the motion should not be transferred.

II. **THE UNITED STATES HAS WAIVED ANY RIGHT IT MAY HAVE POSSESSED UNDER RULE 26(b)(4)(B) TO PREVENT DISCLOSURE OF THE OPINIONS OF ITS EXPERT WITNESSES.**

The United States claims, in support of its motion to quash, that Dr. Stuart may not be deposed because she is a "non-litigating expert," Application to Transfer at 1, by which the

8

United States probably means a non-testifying expert. However, the United States plainly has waived any right it may have possessed not to disclose the opinions of its expert. It has done so, first, by disclosing Dr. Stuart's opinions and the basis therefor on numerous occasions, and second, by representing to the parties and the district court that will hear and decide the State's motion that Dr. Stuart has found Greene Valley Developmental Center in compliance with the decree. The United States has disclosed Dr. Stuart's opinions in expert reports that were shared with the parties; during the exit interview of March 16, 2005; in its letter to the parties on March 25, 2005; in its letter to the parties on May 11, 2005; in its submission to the status report to the Court in June, 2005; and in its response to the Request for Admissions submitted by the State of Tennessee. Further, the United States has injected its own characterization of Dr. Stuart's findings into the litigation by submitting that characterization in response to discovery requests and in a status report filed with the district court.

> Fed. R. Civ. P. 26(b)(4)(B) provides in relevant part that
>
> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained ... by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances.

"Exceptional circumstances" exist when "it is impracticable for the party seeking discovery to obtain facts and opinions on the same subject by other means."[2]

---

[2] The People First of Tennessee plaintiffs assert that they are entitled to depose Dr. Stuart, not because "exceptional circumstances" exist in the usual sense — the People First plaintiffs have retained their own expert and will offer her testimony at the hearing — but on the United States' waiver and the fundamental unfairness of allowing the United States' unsupported representations about its expert's opinions to stand without any ability to examine whether those are in fact his opinions and whether those opinions have adequate support in fact.

9

The protection from disclosure created by Rule 26(b)(4)(B) is not absolute. Since it may be overcome by a showing of exceptional circumstances, it is a qualified protection, and like any qualified privilege, it may be waived. *Atari Corp. v. Sega of America,* 161 F.R.D. 417, 420, 422 (N.D. Cal. 1994). "Neither the work product doctrine nor Rule 26(b)(4)(B) is an absolute bar to discovery." *United States v. Bell,* 1994 U.S. Dist. LEXIS 174800 (N.D. Cal. November 9, 1994) *13.³ Here, the United States has waived the subject matter of Dr. Stuart's opinions concerning Greene Valley Developmental Center by its partial disclosure of materials related to those opinions.

Waiver of the protections of Rule 26(b)(4)(B), like waiver of other privileges and protections from discovery, may occur by explicit disclosure "or by implication when fairness mandates." *Hollinger Int'l v. Hollinger, Inc.,* 230 F.R.D. 508, 515 (N.D. Ill. 2005). What constitutes a waiver depends upon all the circumstances. *Cf. United States v. Nobles,* 422 U.S. 225, 240 n. 14; 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975) (concerning waiver of work product protection).

People First asserts that the United States has waived protection for the *subject matter* of Dr. Stuart's opinions. The doctrine of subject matter waiver, which allows the party seeking discovery to reach all potentially privileged statements or documents concerning a particular

---

Fed. R. Civ. P. 35(b), referring to reports generated after physical or mental examinations, is inapplicable in this case.

³Plaintiffs are aware that some courts have treated Rule 26(b)(4)(B) as conferring an absolute protection from discovery, and distinguishing it in this respect from work product doctrine and attorney client privilege. *See, e.g., Netjumper Software* and *Ludwig v. Pilkington,* 2003 U.S. Dist. LEXIS 17789 (N.D. Ill. Sept. 30, 2004) **8-10. However, this extreme position is manifestly incorrect because the plain language of the rule does not establish an absolute immunity from discovery but only a qualified immunity since it allows for exceptions.

subject once one privileged conversation on that topic has been disclosed, is a form of implied waiver that is "designed to ensure fairness to litigants." *Hollinger International, Inc., v. Hollinger, Inc.,* 230 F.R.D. 508, 515 (N.D. Ill. 2005), *citing In re Von E Bulow,* 828 F.2d 94, 103 (2d Cir. 1987).

Under the doctrine of subject matter waiver, voluntary disclosure of a privileged document or communication effects a waiver of the privilege as to all other privileged communications concerning the same subject matter. *Standard Chartered Bank PLC v. Ayala Internat'l Holdings,* 111 F.R.D. at 85. The key is that the disclosure be voluntary, not inadvertent. *Id.* Here, the disclosures made by the United States are plainly voluntary and purposeful and not simply inadvertent.

Subject matter waiver prevents a party from "deliberately injecting into the case" privileged but self-serving statements while denying other parties access to potentially damaging statements on the ground of privilege. *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977, 979 (D. Del. 1982) (applying the principle to attorney-client communications). "[F]airness and full disclosure cannot permit a party to selectively choose to produce only those communications which may be favorable to him and withhold on grounds of privilege others which may be favorable to his adversary." *Standard Chartered Bank PLC v. Ayala Internat'l Holdings,* 111 F.R.D. 76, 85 (S.D.N.Y. 1986).

Courts thus will find a waiver when a party seeks to use a privilege "as both a sword and a shield." *Hollinger,* 230 F.R.D. 508 *33. In *Hollinger,* the court declined to order disclosure of opinion work product because it had not been used as a sword to gain an unfair tactical advantage, and the opinion had not been placed at issue in the litigation. Here, the opposite is

11

true, and therefore plaintiffs are entitled to depose Dr. Stuart and examine the basis for the representations the United States has made to the other parties.

As the courts have often noted, Rule 26(b)(4)(B) is grounded, not in the doctrine of attorney work product but in the principle of fundamental fairness to litigants. Thus, a party who seeks to invoke the protection of Rule 26(b)(4)(B) must do so within the boundaries of fairness to the other parties, and not seek to advantage one party and disadvantage others by selective use of protected material. Applying the doctrine of subject matter waiver to a party who has made selective use of material it asserts to be privileged thus is highly consistent with the Rule 26(b)(4)(B) command of fairness to litigants. Fundamental fairness is implicated when a party affirmatively relies on its conclusions based on undisclosed material, or, as in this case, allows another party to rely on and use those conclusions, and then attempts to shield the material underlying those communications from the opposing party.

The aspect of fairness to litigants that is most commonly invoked by proponents of Rule 26(b)(2)(4)'s protection, that of "precluding unreasonable access to an opposing party's diligent trial preparation," *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir. 1984), is not implicated here. Certainly, a purpose of the Rule is "to discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching basic information or valuable opinions from experts retained by their opponents." *In re Pizza Time Theatre Sec. Litig.,* 113 F.R.D. 94, 96 (N.D. Cal. 1986). But here, plaintiffs are not trying to piggyback or get a free ride based on the United States' diligent trial preparation. They have retained their own expert, diligently and extensively surveyed active treatment and communication services over two lengthy visits to Greene Valley, reviewed thousands of pages of documents. They are simply attempting to determine whether the United

States' representation of its experts' position and the conclusions it has placed at issue in this litigation to the advantage of the defendants, is in fact supported by the experts' findings

Thus, under Rule 26(b)(4)(B) as well as under the doctrine of work product protection and the attorney-client privilege, any protection from disclosure that otherwise would inhere in withheld communications should be treated as waived by a party's affirmative use of the materials held to be privileged. Applying this principle, the court in *Kidder Peabody Sec. Litig.,* 168 F.R.D. 459 (S.D. N.Y. 1996), found that a corporation had waived the attorney-client privilege with respect to an attorney's investigative notes from interviews with its employees by its "repeated injection of the substance of [a] report" that purported to be based on the interviews. The court ordered disclosure of summaries of the witness statements. *Id.,* 168 F.R.D. at 473.

In *Atari Corp. v. Sega of America,* 161 F.R.D. 417, 420 (N.D. Cal. 1994), the court explicitly applied the doctrine of subject matter waiver to Rule 26(b)(4)(B) and held that the waiver was not limited to the information disclosed during the negotiations because "'[a] party cannot choose to disclose only so much of allegedly privileged matter as is helpful to his case ... Once the party begins to disclose any confidential communication for a purpose outside the scope of the privilege, the privilege is lost for all communications relating to the same matter.'" *Id.* n. 4, *quoting Burlington Indus. v. Exxon Corp.,* 65 F.R.D. 26, 46 (D. Md. 1974). Accordingly, the court held that any protection afforded the non-testifying expert by Rule 26(b)(4)(B) as to opinions expressed in the videotape had been waived, 161 F.R.D. at 422, ordered production of "[a]ll documents relied upon in forming the opinions stated in [the expert's] videotaped statement given to Sega representatives," 161 F.R.D. at 420, and allowed the plaintiffs to question the expert in a deposition on the opinions contained in the videotape. 161 F.R.D. at 422.

Thus, the principles governing subject matter waiver that have been applied by the courts in cases concerning other privileges and protections from discovery, such as work product doctrine and attorney client privilege, must also be applied in cases where the protection sought to be asserted arises under Rule 26(b)(4)(B). Courts have found subject matter waiver in many such cases. For example, in *Granite Partners L.P. v. Bear, Stearns & Co., Inc.,* 184 F.R.D. 49, 55 (S.D. N.Y. 1999), the court held that a trustee in bankruptcy had waived work product privilege by placing undisclosed material "at issue" in the litigation, and ordered production of the materials. *See also Holmgren v. State Farm Mutual Automobile Insurance Co.,* 976 F.2d 573, 577 (9th Cir. 1992) (protected opinions may be discovered when they are at issue in a case and the need for the material is compelling); *Harding v. Dana Transport,* 914 F.Supp. 1084, 1103 (D.N.J. 1996) (a party waived its right to assert privilege as to an investigation by affirmatively inserting the issue of the investigation into the litigation). *Compare Varel v. Banc One Capital Partners, Inc.,* 1997 U.S. Dist. LEXIS 4711 (N.D. Tex. February 25, 1997) *11 (finding no subject matter waiver where the party had not put an investigation at issue nor sought to gain an unfair advantage over opposing parties). *See also Klein v. FPL Group, Inc.,* 2003 U.S. Dist. LEXIS 19979, 2003 WL 22768424 (S.D. Fla. Sept. 26, 2003) at *12 (finding work product and attorney client privileged waived and ordering production of documents so that the plaintiffs could determine whether a report was based upon a reasonable investigation).

As in the above cases, the reasonableness of the United States' conclusion that Greene Valley Developmental Center is in compliance with the Settlement Agreement is at issue in this case. The United States has affirmatively injected its position that the institution is in compliance into the litigation and has claimed that its position is based on the opinion of its experts. The

result of its action is to accord the State of Tennessee an unfair advantage in its Motion for Partial Termination. Fundamental fairness dictates that the statements of the United States' experts be produced so that plaintiffs can determine whether the United States ' position is in fact supported by expert findings.

The fact that some of Dr. Stuart's statements may have been communicated to other parties in the context of meetings that the parties agreed to treat as settlement discussions does not immunize the statements from discovery. The court so held in *Atari Corp. v. Sega of America,* 161 F.R.D. at 420, where the plaintiff sought to depose the defendants' non-testifying expert on the contents of a taped interview voluntarily produced in the course of settlement discussions and to require the expert to produce all documents on which he relied in forming the opinions expressed on the tape. The court held that the defendant waived its immunity from discovery of the underlying materials on which the expert relied in the taped interview because the voluntary production of the tape, even during settlement discussions, was inconsistent with the continued confidentiality of those materials. "Waiver of a privilege may occur by voluntary disclosure to an adverse party during settlement negotiations, despite any agreement between the parties to keep the information confidential." *Id., citing In re Chrysler Motors Corp. V. Overnight Evaluation Program Litigation,* 860 F.2d 844, 847 (8th Cir. 1988).

Numerous other courts have held that material otherwise immunized from discovery is discoverable when disclosed during settlement negotiations. *See Eagle Compressors v. Emergency Products, Inc.,* 206 F.R.D. 474, 479 (N.D. Ill. 2002), *citing Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 960 F,.2d 844, 848-47 (8th Cir. 1988); *Griffith v. Estate of Smith,* 161 F.R.D. 687, 699-700 (C.D. Cal. 1995) (finding waiver of protected materials

produced in settlement negotiations or despite an agreement that the materials would be kept confidential); *cf. SICPA North America, Inc. v. Donaldson Enterprises, Inc.*, 179 N.J. Super. 56, 64(1981) (finding waiver of privilege for a report used in settlement negotiations).

### III. THE UNITED STATES' ALLEGATIONS OF IMPROPER SERVICE AND OTHER IMPROPRIETIES HAVE NO MERIT.

The United States asserts that Dr. Stuart may have been served improperly, yet provides no evidence of that assertion. The United States' assertions of lack of notice and adequate time for production also have no merit, since by this time all persons affected by the subpoena and notice of deposition have had ample time to prepare and respond, and the deposition can be rescheduled at a time convenient for Dr. Stuart and the parties. Since the United States has moved for a stay of discovery until this dispute is resolved, and the State of Tennessee defendants are willing to participate in a deposition of Dr. Stuart outside the timeline in the district court's scheduling order, it seems unnecessary for the Court to decide whether the deposition is barred by that timeline.

## Conclusion

For the reasons set forth above, the United States' Application for Transfer should be denied.

| | |
|---|---|
| Edward G. Connette<br>Essex Richards, P.A.<br>1701 South Boulevard<br>Charlotte, NC 28203<br>704/377-4300 | /s/Robert Berlow, Bar No. 928069<br>805 Fairfield Estates Court<br>Crownsville, MD 21032<br>(301) 912-2281 |
| Jack W. Derryberry, Jr. TN Bar No. 3870<br>WARD, DERRYBERRY & THOMPSON<br>Suite 1720, Parkway Towers<br>404 James Robertson Parkway<br>Nashville, TN 37219<br>(615) 244-0554 | Judith A. Gran, PA Bar No. 40134<br>PUBLIC INTEREST LAW CENTER<br>OF PHILADELPHIA<br>125 S. 9th Street<br>Suite 700<br>Philadelphia, Pennsylvania 19107<br>(215) 627-7100 ext. 225 |
| February 13, 2006 | Earle J. Schwarz<br>GLANKLER BROWN, PLLC<br>One Commerce Square, 17th Floor<br>Memphis, Tennessee 38103-2566<br>(901) 576-1844 |

17